# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

ALKIVIADES DAVID; FILMON TV LTD.; FILMON TV INC.; ALKI DAVID PRODUCTION INC.; HOLOGRAM USA; SWISSX.

*Plaintiff(s)*

-v-

THOMAS GIRARDI, ESQ; GLORIA ALLRED, ESQ.; LISA BLOOM; ESQ.; NATHAN GOLDBERG, ESQ.; RENEE MOCHKATEL ESQ.; DOLORES Y. LEAL ESQ.; LEAH WILSON; GAVIN NEWSOM; JOSEPH CHORA; ALLRED, MAROKO & GOLDBERG; THE STATE BAR OF CALIFORNIA; ELIZABETH TAYLOR MAHIM KHAN; CHASITY JONES; LAUREN REEVES; COMCAST INC.; COMCAST VENTURES, LLC;.

*Defendant(s)*

CASE NO.

## MOTION FOR TEMPORARY RESTRAINING ORDER
## PENDING RELIEF BY PERMANENT INJUNCTION

COMES now, counsel for the plaintiffs and moves this Honorable Court for emergency relief by Temporary Restraining Order (TRO). This relief is sought pursuant to the provisions of Rule 65(b)(1)(A)(B) F.R.Civ.P., in that immediate and irreparable injury, loss, or damage will result to ALKIVIADES DAVID, before the adverse party can be heard in opposition. It is clear that *a violation of a criminal statute may provide the basis for tort liability. See – Crosstex N. Tex*

1

*Pipeline, L.P. v. Gardiner, 505 S.W. 3d 580 (Tex 2016).* The RICO statute under U.S.C. § 1964(c)[1] allows for a civil cause of action for any person aggrieved by particular criminal conduct as set out in U.S.C. § 1961(1)(B). The gravamen of the Plaintiff's cause for Temporary Restraining Order and subsequent injunctive relief is predicated upon [fraud] to include but not limited to mail fraud under to the civil RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO); 1965(a)[2]; Money laundering under 18 U.S.C. § 1956(a)(1)[3] and Texas Penal Code § 32.01[4] for the purpose of the Court's emergency enjoining of relief. A judgment obtained by fraud

---

[1] 18 U.S.C. § 1964(c)
Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

[2] 18 U.S.C. § 1965(a)
   (1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

   (2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

[3] 18 U.S.C. § 1965(a)(1)
Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
   (A)
   (i)
   with the intent to promote the carrying on of specified unlawful activity;

[4] MONEY LAUNDERING. (a) A person commits an offense if the person knowingly:
   (1) acquires or maintains an interest in, conceals, possesses, transfers, or transports the proceeds of criminal activity.

2

is a nullity. To establish the fraud, the court in which the judgment is brought in question may consider the entire record in the case, pleadings, process and evidence, and may, in proper cases, consider extrinsic evidence. *O'Boyle v. Bevil*, 259 F.2d 506, 517 (5th Cir. 1958). In the state of Texas it is the fundamental law that any order or judgment obtained by or from a court through fraud is voidable, and same is not res adjudicata between the parties and may be set aside upon the establishment of the fact that same was obtained through fraud. *See - Brammer Wilder v. Limeston County*, 24 S.W.2d 99, 105 (Tex. Civ. App. 1930).

## WHY THE TEMPORARY RESTRAINING ORDER SHOULD ISSUE

ALKIVIATES DAVID is billionaire businessman and movant to this pleading. In 2008 he was the majority shareholder of Leventis-David Group, which owns Coca-Cola Hellenic bottling plants in 28 countries. The movant seeks relief from a judgment perpetuated by disturbing and unique fraudulent activities. In that, the perpetrators of the massive fraud and more specifically, the GIRARDI-KEESE Enterprise consiste[d] of highly influential lawyers who engaged in fraudulent and criminal activities throughout multiple jurisdictions of the United States to include but not limited to the state of Texas and the Federal Northern District of Texas. The movant has and is being victimized by fraud to the extent of unlawful acquisitions of the Plaintiff's domestic home, business interest, and international property.

---

(3) invests, expends, or receives, or offers to invest, expend, or receive, the proceeds of criminal activity or funds that the person believes are the proceeds of criminal activity; or

(4) finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity.

3

The decision whether to grant a preliminary injunction is within the discretion of the court, but it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden." *John Crane Prod. Solutions*, *Inc. v. R2R & D*, *LLC*, 861 F.Supp.2d 792, 794 (N.D. Tex. 2012) (Fitzwater, C.J.) (citing *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir.1985)). To obtain a preliminary injunction, plaintiffs must establish each of the following: (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to them outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *E.g.*, *Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curium) (unpublished table decision). *Lee v. Verizon Commc'ns Inc.*, Civil Action No. 3:12-CV-4834-D, at *4 (N.D. Tex. Dec. 7, 2012).

(1) There is a substantial likelihood that movant will prevail on the merits to its civil RICO lawsuit under 18 U.S.C. § 1964 which is pending before this Honorable Court, where the conduct engaged in by the persons described within the instant lawsuit as the GIRARDI-KEESE Enterprise, have already been determined by at lease one federal district court to be fraudulent conduct of illegal activities. And more specifically, this determination was made by United States District Judge Thomas Durkin in the related case of *In re Lion Air Flight JT 610 Crash* (18 C 7686 at *1-2 (N.D. Ill. Nov. 2, 2022). District Judge Durkin expressed that:

> "Evaluation of counsel's conduct is now left to more proper authorities, whether they be a state bar, criminal prosecutors, ***or one of the several ongoing civil proceedings addressing the relationship between these parties specifically or Girardi's actions more generally.*** The Court alerted the U.S. Attorney for this

district to the facts of this case when this motion was first filed **because Girardi's conduct is unquestionably criminal**." (Emp added)

"Additionally, Girardi's theft in this case, **and apparently many others**, has been well publicized nationally." *** "Nevertheless, in the interest of the larger goal of **unwinding Girardi's fraud**, and identifying those responsible, the Court… "

Moreover, Jay Edelson is a Chicago, Illinois, based attorney who brings forth another civil RICO action against the criminal enterprise of Thomas Girardi for yet a different type of fraudulent criminal scheme. *See* – (Exhibit 1) *Edelson v. Lira*, Case No. 3:22-cv-03977 United States District Court for the Northern District of California, San Francisco Division. In his July 6, 2022, Complaint Edelson states:

> "Thomas Girardi ("Tom"), was a celebrity both inside and outside the courtroom, and was viewed by many as perhaps the most prominent plaintiff's lawyer in the country. But inside the firm's doors, the story was completely different. As the layers have been pulled back more and more each day with the pending bankruptcies of Girardi Keese and Tom, and the torrent of claims and investigations that came in the wake of the firm's collapse, the real story is one that seems like a tale out of a John Grisham novel: ***Girardi Keese was little more than a criminal enterprise, disguised as a law firm***." See - Pg. 1 ¶ 1. (Emp added)
>
> "Indeed, the Girardi Keese firm operated what we now know ***was the largest criminal racketeering enterprise in the history of plaintiffs' law***." *See* - Pg. 1 ¶ 2. (Emp added)
>
> "The basic scheme operated like this: ***when a new opportunity for cases came in, the firm would tap into its network of non-lawyers***, sometimes called "case runners," ***to find injured clients***. These individuals were paid with cash for getting clients to hire the firm (which is illegal) ***and would also take a cut of any eventual recovery*** for the client (which is also illegal)." *See* – Pg. ¶ 5. (Emp added)

As reported in the movant's civil RICO and Antitrust Complaint at Pg. 11 ¶ 11- 13 and Pg. 14 ¶ 1-6 that ELIZABETH TAYLOR acted as "a recruiter" for the GIRARDI-KEESE Enterprise and that CHASITY JONES served as another non-attorney co-participant client in the scheme to

5

defraud. See – the instant RICO and Antitrust Complaint (Doc 1) at Pgs. 29-33. In text message evidence CHASITY JONES unambiguously details her motive for the fraudulent lawsuit that was instituted against her boss ALKIVIADES DAVID. By admissions made by CHASITY JONES by way of text messages, ALKIVIADES DAVID was not sued because of sexual misconduct as was fraudulently alleged, but because the billionaire ALKIVIADES DAVID was going "Public" with one of his many companies and ELIZABETH TAYLOR and CHASITY JONES became disgruntled due to the rate of pay that ALKIVIADES DAVID paid his employees. *See* – 2016 Text messages of CHASITY JONES attached hereto below:

*"I hate Filmon!!"* – *"I'm quitting for sure! They only paid me part of my commission and Alki agreed to pay me and Peter don't want to pay. Alki said he was going to make sure I get paid but this is not right I have to fight for my money."*



"Ok. I'm going to sue Alki…for harassment. I'm going to go home and find another attorney today and go over my notes I kept" *** "That whok company is dirty" *** **"They are trying to go public and that not fair how he does me and people"** *** "I'm going to call and retract my statement from Barry Rotyman too" (Emp added)



"I'm going to call the lawyer back. ***That's what Alki get***!!!!" *** "I think I'm going to sue him ***too bc he deserves it by the way he treat people*** and things he do to people" *** "I'm going to call Elizabeth today this afternoon" (Emp added)



The "statement" that CHASITY JONES reported to be retracted from Barry Rotyman, is the February 16, 2016 "DECLARATION OF CHASITY JONES", where JONES freely declared under penalty of perjury is attached hereto below:

### DECLARATION OF CHASITY JONES

I, Chasity Jones, declare as follows:

1. This Declaration is based upon my personal knowledge and personal participation in the events described. If called to testify as a witness, I could and would testify competently as follows.

2. I am a Business Development Manager for FilmOn TV Networks, Inc. I held the same position with FilmOn TV Networks, Inc., in 2015 when Elizabeth B. Taylor was employed by FilmOn. I interacted with Elizabeth B. Taylor on a daily basis.

3. I understand that Elizabeth B. Taylor is accusing Alki David, the president and CEO of Film TV, Inc., and Alki David Productions, Inc., of sexual harassment, including inappropriate touching. I never observed any sexual harassment in regard to Ms. Taylor. I never observed Ms. Taylor being subjected to sexual advances, sexual conduct, or sexual comments by Mr. David or anyone else. I never observed Mr. David inappropriately touching Ms. Taylor or using crude language around her or in any way acting inappropriately around her. I never observed anyone inappropriately touching Ms. Taylor or acting inappropriately around her. Although Ms. Taylor told me after she left FilmOn that she had been sexually harassed while at FilmOn as set forth in Paragraph 4 below, while she worked at FilmOn, Elizabeth B. Taylor never complained to me or told me that she was being sexually harassed or inappropriately touched. No one else at our offices ever told me that Ms. Taylor was being sexually harassed or inappropriately touched. I understand that Ms. Taylor is saying that Mr. David would invite her into his office, close the door, and then sexually harass her. On multiple occasions, I observed Ms. Taylor enter Mr. David's office and close the door, and then Mr. David immediately open the door.

1

"After Elizabeth B. Taylor was terminated in June 2015, Ms. Taylor contacted me on multiple occasions via text messaging. Ms. Taylor asked me to testify that I had witnessed Alki David sexually harass Ms. Taylor "to make her case bigger." ***I have never been sexually harassed by Mr. David.*** I once again told Ms. Taylor that I would not testify or be a part of her case. I finally asked her to stop contacting me, which she did." (Emp added)



Due to the large degree of corruption and influence wielded by the GIRARDI-KEESE Enterprise, *See* – (Exhibit 2) the movant was barred from presenting any incriminating evidence against ELIZABETH TAYLOR or CHASITY JONES before the relevant state courts. *See also* – (Exhibit 3) April 29, 2020, statement of attorney Murry Greenberg.

Rule 65(b)(3) F.R.Civ.P., mandates that if an order for a preliminary injunction issues that a hearing must set at the earliest possible time. Should the order issue, movant offers proof that one or more lawyers who are in good standing with their respective State Bar Associations will testify upon knowledge and belief, that the unit identified as the GIRARDI-KEESE Enterprise included amongst other attorneys, THOMAS GIRARDI, GLORIA ALLRED, LISA BLOOM, and JOSEPH CHORA. Further, ALKIVIADES DAVID will testify that each above-named attorney was complicit in the fraud committed against him by ELIZABETH TAYLOR and CHASITY JONES.

## THE LIKIHOOD OF IRREPARABLE HARM TO ALKIVIADES DAVID

(2) There is a substantial threat that ALKIVIADES DAVID will suffer irreparable injury if the injunction is not granted. In that, on or about February 7, 2023, JOSEPH CHORA, who functions as the debt "Enforcer" for the GIRARDI-KEESE Enterprise served the Movant with Notice to Vacate his multimillion-dollar home located at 23768 Malibu Road, Malibu, California, 90265 in effort to satisfy one of many liens which are predicated on the ELIZABETH TAYLOR and or CHASITY JONES fraud under the GIRARDI-KEESE Enterprise as described within Plaintiff's Racketeering and Antitrust Complaint and incorporated into the herein pleading. Additionally, CHORA seeks to satisfy one or more international liens in furtherance of the ELIZABETH TAYLOR and or CHASITY JONES fraud under the GIRARDI-KEESE Enterprise, and more specially the movant's private home located at Chalet Wispilen, Gstaad Switzerland 3780. *See* – (Exhibit 4) In addition to one or more liens against the movant's SWISSX business venture, also in furtherance of the ELIZABETH TAYLOR and or CHASITY JONES fraud under the GIRARDI-KEESE Enterprise. *See* – (Exhibit 5)

(3) Movant asserts that threatened injury to ALKIVIATES DAVID outweighs the threatened harm the injunction may do to defendants ELIZABETH TAYLOR and CHASITY JONES where any proceeds derived from a pattern of unlawful activities is prohibited by law pursuant to 18 U.S.C. 1956(a). Moreover, any judgment predicated upon fraud is unenforceable. "The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question." *Universal Oil Co. v. Root Rfg. Co.*, 328 U.S. 575, 580 (1946). Under Texas law "Fraud vitiates every transaction tainted by it. *Middleman v. Atlantic Mut. Ins. Co.,* 597 S.W.2d 565, 568 (Tex.Civ.App. — Waco 1980, writ ref'd n.r.e.)" *Vickery v. Vickery*, 999 S.W.2d 342, 354 (Tex. 1999). Federal courts likewise concur that any court of competent jurisdiction, either state or federal, can adjudge the merits of any suit involving the validity of a final judgment of any other court, state or federal, where the basis for the attack is that the court rendering the questioned judgment did not have jurisdiction to render it, or that such judgment was procured by fraud. *See - O'Boyle v. Bevil*, 259 F.2d 506, 515 (5th Cir. 1958).

(4) Movant asserts that granting the preliminary injunction will not disserve the public interest. In that, granting movant preliminary injunction will in fact better serve public interest by encouraging legislative bodies to regulate the field of private judges inasmuch, that the criminal schemes orchestrated by the GIRARDI-KEESE Enterprise which was only able to exist due to the sub-regulation of private judges, would be dissuaded. See – https://abovethelaw.com/2022/08/pushing-private-judging-out-of-the-shadows/

> "Girardi had palsy-walsy relationships with retired and current judicial officers, which many people in the legal community knew, but kept quiet. Now the Chief Justice of the California Supreme Court Tani Cantil-Sakauye has weighed in. She is retiring and will not stand for another 12-year term in November; however, she had some choice words about the conduct

>reported in the LA Times story. The chief justice said the revelations about the private judges who worked for Girardi were "shocking." She acknowledged that "there are not enough safeguards regarding the business of private judging."

>"What's just as shocking is how previously well-regarded private judges could be caught up in Girardi's frauds."

Movant has satisfied every legal prong for obtaining judicial relief against the massive fraud that was perpetrated against him, and the nation's judicial system by activities of the GIRARDI-KEESE Enterprise. Whereas justice demands that injunctive action by the federal courts be afforded.

## CONCLUSION AND PRAYER FOR RELIEF

ALKIVIADES DAVID; FILMON TV LTD.; FILMON TV INC.; ALKI DAVID PRODUCTION INC.; HOLOGRAM USA; SWISSX, claims are *inter alia*, that the conduct of ELIZABETH TAYLOR and CHASITY JONES are attempting to collect on lien(s) or debt(s), where such lien(s) or debt(s) were generated as a result of proceeds derived from unlawful racketeering activities, and further where said activities being refrained under this motion for Temporary Restraining Order is lawful and just, granting of the Temporary Restraining Order by this Honorable Court is warranted.

WHEREFORE, the movants by and through undersigned counsel prays that this Court grant the MOTION FOR TEMPORARY RESTRAINING ORDER PENDING RELIEF BY PERMANENT INJUNCTION.

Respectfully Submitted,

/s/Mark Lieberman
MARK LIEBERMAN
1704 Pine Hills Lane
Corinth, Texas 76210
(817) 905-3772
Mjc358@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2023, I electronically filed the foregoing document with the United States District Court for the Northern District of Texas at Dallas, by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system. The Court should note that as of this date the Respondents nor counsel for Respondents have appeared in this cause.

/s/Mark Lieberman
MARK LIEBERMAN
1704 Pine Hills Lane
Corinth, Texas 76210
(817) 905-3772
Mjc358@hotmail.com